The first case on the calendar, Copeland v. Vance in the City of New York. Okay, thank you. Thank you. No demonstrative evidence, Mr. Eschmutter? No, Your Honor.  Good morning, and may it please the Court. This entire case boils down to one critical question. How can a person make the determination that a given folding knife is legal? That is, not a gravity knife. The answer is, they can't. No one can ever make that determination. And the reason is that a person cannot, no matter how many times they try to apply the functional test, no person can predict, if they cannot open the knife that way, no person can predict whether some other person might be able to do that. Don't you concede, though, that the statute can be constitutionally enforced against true gravity knives? Yes, correct, which is why it's an as-applied challenge, not a facial challenge. But the key here is that it cannot constitutionally be applied to common folding knives with bias towards closure precisely because of that feature. It's the bias towards closure that creates the variability in the functional test, and it's the variability that makes the test indeterminate. So when a person applies the functional test to a given knife and it does not open, they can draw no conclusion about whether that knife is legal or not, because the test is not whether the particular person can apply the functional test and open the knife. It's whether anyone, anywhere, at any time could open that knife, and we see that from the cases. When we think, though, of as-applied challenges in the vagueness context, don't we usually mean as applied to the vagueness challengers personally, not as applied to a class of objects regulated by the statute? It is as applied to the plaintiffs and anyone similarly situated, because if it's true for Mr. Copeland, it's true for everybody. It's the nature of the claim. So the reason it's as applied, of course, is because it doesn't literally go to every possible application of the statute, and so it can't be facial. It's just a very broad as-applied challenge, and so I know it may feel kind of like it's a facial challenge because it applies to so many people. But if the claim is true for Copeland, if the claim is true for Perez, if the claim is true for Native Leather, it's also true for everybody. There is no one who can possess a folding knife and ever know that it's legal, and that's the critical thing because... I mean, you're saying this is not a facial challenge, but doesn't the evidence in the record is mostly perhaps exclusively applied to common folding knives. Isn't that correct? Correct. Correct. But that doesn't mean... So isn't that functionally a facial challenge? Well, again, I believe we briefed this. It doesn't matter whether we call it a facial challenge or whether we call it an as-applied challenge. We know from the record that the statute can constitutionally be applied to true gravity knives, so technically it's not facial because the entire statute is not facially invalid. But if we say that it's like a facial challenge because it applies to almost every knife that anybody carries or practically really every knife that people carry, because we really don't have any reason to believe that people carry German paratrooper knives, it doesn't affect the validity of the claim. In other words, if we say that this is essentially a facial challenge to the application of the statute to common folding knives, that's fine too. I have no problem with calling it that way. But the issue is it is unconstitutional in every instance in which it would be applied to a common folding knife with a bias towards closure. It doesn't matter whether we call that facial because it's to every application of that concept or whether we call it as-applied because technically under the rule, it doesn't literally apply to every possible application of the statute. I don't think that affects the outcome of the case. Either way, the claim is plainly valid because there's literally no way to know if you're engaging in illegal conduct. And that's important. Not only does due process require that you can identify illegal conduct, you also have to be able to identify legal conduct. And so that's where the district court erred because the government and the district court only focused on, well, when the knife opens, it's a gravity knife. What's the problem? The problem is not when it opens. The problem is when it doesn't open. And that was illustrated beautifully by the cross-examination of Dan Rather at the June 16th hearing. I asked him, I want to go into a store. Or let's say John Copeland wants to go into a store and buy a knife. I mean, that's the allegation of the complaint. He doesn't want to get arrested again. So he wants to know what knife can he possess without getting arrested. So when I asked Mr. Rather, what does a person do, he said, well, you should apply the functional test. I said, great. So suppose it doesn't open, which is very common with some knives and some people. I said, is that a gravity knife? He said, well, no, you should try it again. I said, fine. Let's say Mr. Copeland or Mr. Perez or whoever tries the functional test a second time and he can't get it open using the wrist flick test. Is that a gravity knife? And he said, no. I said, okay, now that person, whether it's Copeland, Perez, or anybody else, takes one step out the door, encounters a police officer, and that police officer takes the knife and is able to flick it open using the functional test. Is it a gravity knife? And he said, yes. Now, I mean, that's astonishing that the same knife within two minutes could start out not a gravity knife and then suddenly it's a gravity knife when you walk out the door because the police officer could open it, but the individual couldn't. That's the problem that every single person in New York faces. Copeland faces that problem, Perez, Native Leather, and everyone, everyone in this courtroom, everyone in this panel, everyone in the state of New York. No one can ever walk into a store, whether it's Native Leather, Home Depot, Paragon, and identify a legal knife and satisfy themselves that they would not be subject to arrest and prosecution. That's why the application of the gravity knife law to common folding knives with bias towards closure is unconstitutionally void for vagueness. And that's the knife, those are the kinds of knives that millions of people carry, and that's undisputed in the record. Millions of folks carry them in New York and throughout the United States. And, in fact, we know this to be the case, not just from the factual record, but we know it from People v. Drayden. The New York Court of Appeals specifically identified two categories of folding knives, gravity knives, which are able to be opened through the application of gravity or centrifugal force, and what they called pocket knives, which can't be opened through the application of gravity or centrifugal force. The problem is there's no way. So we know that that's a legal category under New York law, except there's no way to know which knives fall into that category, because the functional test that everybody agrees is the way you do this cannot tell you when you're... Well, interesting, that's what the legal aid amicus says. They wonder why their knives are still being sold. We have that problem, for example, in Paragon. When the DA was dealing with the retailers, they allowed Paragon to still keep, even though certain knives would fail the functional test, they allowed them to keep those knives, keep selling those knives, and the answer to why was, well, they're expensive, they're not going to be used in crime. I see my time is up. Did I satisfactorily answer your question? Yes, you did. Thank you. Thank you, Your Honor. You'll have two minutes in rebuttal. Thank you. Good morning. Elizabeth Krasno appearing on behalf of the District Attorney. Your Honors, this as-applied challenge to the gravity knife statute depends on what plaintiffs have proven, or more accurately, failed to prove, about the actual enforcement actions that led them to file this lawsuit. Rather than focus on the facts of their own arrests and prosecutions, plaintiffs rely heavily in their brief and rely heavily in their argument here on hypothetical enforcements of the statute against hypothetical knives. What about the instance of Mr. Copeland, who was told by two officers in 2009 that his knife was legal, but was arrested and charged a year later for possessing the same knife? Well, Your Honor, there's key differences between the actual facts of Mr. Copeland's case and the hypothetical that Mr. Schmutter was just speaking about when he was presenting his case. What happened to Mr. Copeland was he purchased his knife and he brought it to officers to confirm that it was legal and where they applied the risk-flick test, which actually shows his pre-existing knowledge that that's the test that we used to identify those knives. Then he proceeded to use the knife, admittedly for a year, to cut canvas in connection with his employment and never made any effort to tighten the tension on the blade, which directly impacts the ability of the blade to open in response to the risk-flick test. And if the panel has reviewed the video of plaintiff's demonstration, you can see this perfectly in the final knife that they demonstrate, where Doug Ritter, the chairman of Knife Rights, uses a screwdriver that plaintiff's expert, Paul Sujimoto, testified actually usually comes with the knife when you purchase it. And Mr. Ritter used this screwdriver to adjust the tension on the blade, and he said that it would, I believe I'm quoting, it would be perfectly usable for the user to open the blade with his thumb, but you still couldn't flick the blade open with your wrist, rendering it illegal. Was there another test performed on Copeland's knife after it had been found to be a gravity knife? And after tightening the screw? He does not claim in his trial declaration that he ever attempted to open his knife using the risk-flick test after initially purchasing it. So that's the problem. But it was found to be a gravity knife a year later. A year later it was found to be a gravity knife, and the district court, after hearing evidence about the effect that wear and tear can have on a knife, and after seeing plaintiff's demonstration where it was so clear how you can adjust the blade, found that it was exactly that wear and tear that created the difference in the functionality of the knife over time. And is there any evidence of an attempt to adjust the Copeland knife after it had been found to be a gravity knife to see whether that adjustment would make it no longer a gravity knife? After his arrest, no, Your Honor. He denies ever even attempting to fix the knife in any way. So plaintiffs haven't put in any evidence that he made any effort whatsoever to correct his knife. Their demonstration confirms that you can purchase a folding knife where that's fully possible. However, he doesn't claim to have made that effort at all. Going back, Your Honor, I think the district court in this case correctly found that plaintiffs can't rely on these hypotheticals to satisfy their burden of proof unless they're raising a facial challenge. And in the absence of a First Amendment or other constitutional right that's implicated by the statute, which they have not identified here, the proper starting point is always going to be as applied to their actual arrests and prosecutions. So I think if you take the elements of an as-applied challenge, which we have to start with, and you look first at the first element, which is notice. Were they on notice that possessions of knives like these were illegal under the statute? And in the district attorney's brief, there are citations to 10 to 15 pre-existing court decisions that describe how the statute has been enforced to folding knives since its inception by the risk flick test. So undoubtedly, there was notice that this is the test that we use, that this test is enforced against folding knives and not just the German paratrooper knives that plaintiffs' experts claim is the true gravity knife. And when you look at the second element of an as-applied challenge, Your Honors, which is standards to law enforcement, there's testimony in the record from a prosecutor from my office with 30 years' experience, from the seasoned police officers who were involved in the arrests of Copeland and Perez, that the risk flick test is the exclusive test that's used to identify these knives, and it's the test that's been used since the inception of the statute. So I think based on the actual record evidence that the district court had, looking at the past arrests of these two plaintiffs, Copeland and Perez, and looking at the experiences of Carol Walsh, the district court correctly found that as applied to the facts of plaintiff's case, they could not show either a lack of notice that the statute would be enforced against folding knives in the exact manner that it was forced against them, and they could not show that there was insufficient guidance to law enforcement as to how the statute would be applied. Could you offer some thoughts on the Legal Aid Society's amicus briefs where they say that the law is mainly enforced with respect to gravity knives against minorities and not against major retailers? Sure, Judge. I think the word that they use in their brief is undesirables. They claim that my office uses the statute to enforce it against undesirables, but I think the plaintiffs in this case prove that point wrong. We have two purveyors of fine arts, and we have the owner of a retail space in the most expensive neighborhood in Manhattan. So to the extent that's the argument of the Legal Aid Society, it's belied by the pedigree of the plaintiffs in this case who have no prior record. And I think having reviewed the brief of the Legal Aid Society, it seems that their problem truly is with the fact that there is a bump up in the penal law such that if a defendant is arrested for possession of a gravity knife that has prior felony convictions, that they're eligible for felony indictment for possession of that gravity knife. That has nothing to do with the clarity of the language of the statute itself, which is what we're here to talk about. In fact, I think also if you look at the specific facts of those plaintiffs, or excuse me, those Legal Aid clients, none of them claim that it took more than one attempt to open their knife, and actually two of those arrests predate the election of the district attorney, which plaintiffs are now trying to tell the court, was when this novel wrist flick test was invented, and we started enforcing the statute against folding knives. It's plainly false, according to even their own amici. Thank you. May it please the court. The district court's findings of fact resolve the constitutional questions before the court, and the policy concerns implicated by this case now command the attention of the New York legislature and governor, who are tasked with balancing those concerns against the real and continuing public safety threats of gravity knives. This court should affirm the dismissal of the fakeness challenge, and allow the elected officials of New York to strike the appropriate balance. I want to start with a question about the- Let me ask you, if I could, how can an average member of the public determine that a folding knife is legal? Well, this goes to the district court's finding of fact, which is that the wrist flick test produces consistent results from one person to another who's performing it. So the statute necessarily puts the responsibility on a knife owner to perform that test on his knife, periodically to make sure that that knife does not open with the flick of the wrist. And if it does- But if usage can affect whether or not it can be opened, how can you tell if you've tried it any number of times and it hasn't opened, how can you tell whether the next flick is going to open it? Well, there's no evidence that a knife changes instantaneously. Over time, it can loosen through use. And these plaintiffs here testified that they used their knives regularly, so they had ample opportunity to notice if the knife was loosening. Also, many folding knives have an adjustable screw at the fulcrum, which can be tightened, as my colleague mentioned, to make the knife more resistant to opening. So if a person becomes aware that the knife is becoming loose, they can tighten it. And if the district court's finding that that test produces consistent results, means that someone who intends to avoid criminal liability and stay within the bounds of the statute has ample ability to do that and to know if their knife is prohibited or lawful. And- In the record, at least as I understand it, and correct me if I'm misunderstanding, the assistant district attorney rather testified that a person who is aware of the gravity knife law and who satisfies herself that she cannot open her knife can still be prosecuted under the statute. Well, that's true. Again- How is that? Well, I don't think he was suggesting that that's something that happens. And, again, we don't have any-the plaintiff's burden was to show an instance in which that happened, and they've never done that. But the point was that if a police officer inspects that knife, they can flip it open, then he's permitted to charge that as criminal possession. I think there are other remedies for someone who actually presents that situation. None of these plaintiffs do. Someone who did test their knife diligently and then a moment later buys it in the store, tests it, and then walks out, the other hypothetical, would have a defense in a criminal prosecution, either that the knife didn't open for an ordinary person, there's always an assumption of an ordinary person as the relevant person for the test, would have an application, would have an as-applied vagueness challenge in that criminal prosecution or in this court on habeas, or can move to dismiss in the interest of justice. There are remedies for that person who's not the plaintiff in this case. And Your Honor asked about the facial versus as-applied challenge. I don't think it's essential to resolve that question, how plaintiffs characterize their claim, because if they're making a facial challenge as to a category of knives, then they have to show that this statute can't be constitutionally applied under any set of circumstances. And the district court found that it can constitutionally be applied to these plaintiffs because their knives opened with the first flick of the wrist when tested. The persons who did the test had no particular skill, strength, or dexterity. That's the court's finding, the district court's finding. And that they never tested their knives beforehand. So as applied to them, they had the ability to know that the knives they possessed were unlawful when they were arrested, and they didn't. So because it can constitutionally be applied to them, this statute is not facially unlawful. And just to return briefly to both the question about the legal aid amicus brief and to Your Honor's question, Judge Pooler, about the purchase in stores, the evidence is clear that the district attorney is targeting retailers as well as individuals for possessing unlawful gravity knives. And the purpose clearly is to staunch the flow of these dangerous items. Do they go into the stores and attempt the wrist flick in stores? The district attorney does, yes. Which means that anyone who purchases a knife that looks like a gravity knife is safe because the inventory has been inspected? No. They should also test that knife themselves when they go home and take it out of the box. If it's in a package, they should test it. Because they are also responsible for that. But the point is, the goal is not simply to . . . The burden of this responsibility doesn't fall purely on the shoulders of persons who possess the knives. The district attorney is committed to making sure that, to the extent possible, these knives don't enter circulation and, therefore, that there's less of a risk of someone running afoul of the prohibition without knowing. But it necessarily has to be a test applied at the moment the knife is inspected because, as the evidence shows, these knives can change over time. So even a knife that's been inspected by the retailer, appropriately sold because it's not a gravity knife, it still . . . the burden falls on the individual to make sure that that doesn't become a gravity knife over time. Thank you very much. Thank you. Well, if you wanted to bring us some on set of evidence, you probably couldn't get it through the guards. Yes, that's right, Judge. The government continues to urge this court to make the same error that the district court made in this time around and in the first appeal, which is to pretend that this case is about the prior arrests and convictions. It is not. This is a forward-looking case. It's an as-applied challenge to the statute because the plaintiffs are unable to make the determination as to how to engage in lawful conduct. The district court made the same mistake in the first appeal, which was on the motion to dismiss for lack of standing. This court reversed because this court recognized that this is a forward-looking claim, not a backward-looking claim. There is no case law that says that as-applied challenges can only be as to prior conduct. And in this court's reversal on the standing appeal, recognized that that is, in fact, accurate, that there is no such requirement. Now, I want to just quickly talk about the consistency and the inconsistency in the Ryschlik test. The record below is clear that it's undisputed that there's inconsistency in the Ryschlik test. The government has conceded that below. There is no ‑‑ I mean, we saw that multiple times. Even Dan Rather in his testimony indicated that when they were testing the native leather knives, sometimes a knife would open for one person and not another. We know from when the Kroll representative during the compliance program, when the Kroll representative, the monitor, Mr. Gebau and his people came to native leather, Carol Walsh testified, and this is undisputed, that there were some knives that she could not open that they could. So there's no question that the Ryschlik test is inconsistent. And remember ‑‑ Was there evidence of the attempts to open these knives in which at first they wouldn't open and then with another person they would open and then a repeated attempt by the first person who could not open it? Okay. So first person can't open it. Second person can. First person goes back. Yeah. Was there any evidence as to going back to the first person to see whether that person could then open it? No. But what we do have is six different examples of inconsistency from person to person. So we have Copeland. And the finding by the district court that the reason it opened a year later was because of usage over time has no basis in the record. That's clear error and that should be reversed. There was nothing in the record to indicate that that was where over time. And the suggestion that he should have tightened it, there's nothing to indicate that that had an adjustment screw. The undisputed record shows that most knives do not have adjustment screws. So Copeland could not have tightened it. But most importantly, a person testing their own knife does them no good. So when counsel said, well, a person has an obligation to test their knife periodically, it doesn't do them any good. As we know, it makes no difference how many times they test it. They can test it 100 times. If the police officer can open the knife using the functional test, they can be arrested and prosecuted. And that's why the law is unconstitutional. I just want to be clear about one thing before you sit down. As I understand it, you are not claiming that the statute would be invalid if applied to certain knives that they wish to own. You are, as I understand it, arguing that the statute cannot be constitutionally applied to any common folding knife carried by anyone. With a bias towards closure. Correct. Including the plaintiffs, but also everybody. That's correct. I think I understood your question. That what you're arguing for is really to disable the whole statute. As applied to common folding knives with a bias towards closure. The record shows that the statute is principally and perhaps only enforced against folding knives, right? That's correct, Your Honor. That's correct. We're not aware that anybody carries German paratrooper knives. I just wanted to understand. Yes, thank you, Your Honor. Thank you very much. Thank you for your arguments. The court will reserve decision.